Good morning. To please the Court, Joe Rice from Motley Rice of Charleston, South Carolina, here on as the Tampa Bay Buccaneers. We're here to ask the Court to reverse the ruling by Judge Barbier, whose ruling ended this case based on a failure of causation, based on Judge Barbier's abuse of his discretion in interpreting the agreement, as well as a failure to follow a 495 opinion of this Court. The Tampa Bay Buccaneers are members of the NFL Venture. The NFL Venture is the entity that manages markets, promotes the 32 NFL football teams. They have different branches that roll up into it, but it has a physical year that follows the football season, which is April 1 to March 31. In 2010, the collective bargaining agreement between the NFL Leagues and the Players Association expired. And although efforts to try to renew it had failed, we go into April 1 of 2011 with a lockout in the NFL football, which the board of the Ventures determined there wasn't going to be a football season, and they directed the partners to accrue $8.2 million of income for 2011, and Tampa Bay accrued it starting in April, in May, in June. What did the NFL ever say to accrue it, from an accounting perspective, during these months that are being contested? It was accrued when it was realized that this was the income that was certain to come in, that wasn't contingent upon the football games being played. And under accrual, accounting, when you have that realization— I understand, but the NFL, did the NFL ever say how to account for this? The NFL, the Ventures told them to accrue it, as I understand— What said that? In the affidavit of Mr. Denner. He got into accrual and all this accounting stuff? I didn't see that. Was there any evidence that showed that any other professional NFL team treated these payments from the NFL in the same way that you did? We do not have access to the tax records of any other NFL team. No effort was tried to make it, no testimony about it, no knowledge about it? There was none. The NFL Ventures 2009-2010 tax returns are on the public web, on their financial records, and it's public information that the 32 teams each have a representative on the management of the venture, and all the teams generally make the same decisions. I don't have any specific finding. Was there any—I'm just—well, I guess you've answered my question. Whether everybody knew of the potential lockout and the nonexistence of a football schedule for the fall, and whether anybody changed their accounting practices in anticipation of that fact? Not that we have any reference of, nor did the Buccaneers change their accounting practice. They were on a cruel accounting methodology for 2010 and 2011. What's the evidence that this actually was decided by the Buccaneers in 2011, as opposed to after the fact, when everyone realized how the Spill settlement was going to work? Because these records were all created before, and the contemporaneous 2010 and 2011 records were produced to the center. Years after, I mean, after a long struggle, and you don't have anything, though, from the general—I mean, I saw there's, I think, the expert that your law firm's been using in these cases has opined in this case on the accounting, but is there anything from the Buccaneers' regular accountants slash auditors that say, we decided back in 2011 when we heard about the lockout that we were going to treat this revenue different? In the affidavit of Mr. Dinner, which is 1751 in the record, he says, during April-May, the football was facing a lockout due to this unique solution, Ventures Revenue Forecast Amounts Estimated Earnings in April to March of 2012. It was a year estimation, 8.2— That goes back to my earlier question. All that is to me is the NFL saying, here's the numbers, what they're going to be. But if you're on— I don't see any accounting advice. But my second question, is there any evidence from the Buccaneers' regular accountants saying in 2011, I saw this letter from the NFL, and we decided, pursuant to general accounting principles, we're going to treat the revenue different this year than we have in past years? You have the tax record reconciliation. So that's a no? There's nothing from the auditors or accountants? We don't even know. I couldn't even see in the record who the regular Buccaneers' accountants—who it is. Massive records in the financial records of the Buccaneers. I know that, but is there anything from the accountants—and I assume the Buccaneers use a pretty big accounting firm—there's nothing from them saying why they treated this way, or in fact, that they did make the decision in 2011, or is there? There is nothing from those accountants. There's multiple citations in the record to accounting books, accounting instructions, SEC instructions, that tell you that when you have instructions that the revenue is reasonably to be done, the performance is done, and you accrue it in the accrual accounting method. Accrual means just reporting the receipt of the money. And the appeal panel made the finding that they were instructed to do it. They made the finding that when the payments were made, they had to recruit them. We're reviewing Judge Barbier's decision, right? That is correct. So what is the standard of review for his decision that a mistake was made in putting this in the spring months? I think that he didn't call it a mistake. He called it an error. He presumed there was an error. He factually referred to them as royalties without any evidence in the record that these are royalties. So what's the standard of review for all those decisions? I know you think they're wrong. What's the standard of review? I believe it's abuse of discretion because it's an interpretation of the document, and I think you have a de novo review. The 495 decision and decisions that each of you have sat on have made it perfectly clear that you don't move revenues unless there is an error. And you defined error in 495. And here, the claim vendors, accounting vendors at the claim center, did not find an error. The appeal panel made it perfectly clear that there was no error found here. Judge Barbier goes in and presumes an error. He says, he starts with a factual presumption that it was contrary, and that was an error. He said that these were royalties. These were not royalties. They've never been treated as royalties. You look at the 2009 and 2010 tax returns that were in the record. There's a place to identify royalty income in 2009 and 2010 on the K-1s. These were identified in 2009 and 2010 as ordinary income. They were always treated as ordinary income. It would have been advantageous to the bucks if they could have treated this as royalty because it would not have been subject to the 2.9% Medicare tax. We're talking about $40 million here. We're talking about significant tax savings if they could have treated them as royalty. They couldn't. They treated them as ordinary income in 2009, 2010, and 2011. So Judge Barbier erred in making a factual finding that these were royalty income. The second issue that he erred at is he presumed that the money should go into the football season because that's where the expenses are. There were no expenses. This is a joint venture. These are revenues coming out of the venture, but all the expenses would have been incurred by the venture. That's true for every year. I think if every year you just said, I agree, this isn't necessarily tied to the football season. The Buccaneers and all these teams have a brand that people are buying jerseys in February and April and every month of the year. So starting from scratch, I don't see why it necessarily has to be in the fall. But what Judge Barbier found is there was a practice of putting it in the fall and there was no justifiable reason really other than to create an oil spill claim to put it in the spring months. So why is that wrong? There's zero evidence that anyone knew in 2011 when these records were recorded, when these documents were created, when these tax returns were filed, no one knew what was going to happen in resolution of the BP oil spill. We were in the infancy of the negotiation. I was negotiating. I had no idea what was going to happen. Nobody could have conceived at that point in time that we were going to have a settlement agreement that had a causation presumption and had— I think the other side disputes that the documents are really contemporaneous from that time. But anyway, going to the point that Judge Barbier made, which is why—what is the reason for treating it different? You might be right. As an initial matter, they could have spread this over all the months, but that wasn't their practice. They used a business judgment in April of 2011 to tell the teams, we're in a lockout. Your revenue for this year is going to be $8.2 million, not the historical revenue. We're not going to have the fall revenue. You should record this at $682,000 a month, which is what they did. Because there was no evidence available to you that any other team treated this potential threat of the season in the same way you did for accounting purposes. I do not have the tax records of any other NFL team. That's correct. But I do have contemporaneously prepared and filed records in this record that the Bucks did. Well, I mean, that's—I thought that was subject to some question because you did not, as I understand, never turned over the records or the availability of the records was never made clear as to the records that were actually made at the time this money was received, but these are accounting practices that were later adjusted. I mean, you make that clear. We turned over the original P&Ls, and then we had a summary of them. Then they asked us for the individual expenses matching, and then we turned over hundreds of pages of month-to-month folders—this is just an example—of every record. And the claims administrator never, never— When was the decision actually made to treat this income differently from the way that it had been treated in the past? The decision to accrue it was in May of 2011 when they got the instructions from the league, and the accountants were in an accrual method, and the appropriate treatment under accrual accounting methodology was when you got the information, this is what you do. You accrue it as you get it. But no Buccaneers accountant, at this point, has testified that that— No, there is no testimony, but the documents that are required by the settlement agreement were produced. There's been no challenge by the claims administration and nothing before this appeal. Any directive or suggestion from the NFL as to how it should be booked for accounting purposes? They sent out their forecast of revenue that they did every year. This was a— Talking about whether getting back to Judge Costa's question, to make the decision to book it such as it was for accounting purposes was done by the accountants that usually handle the books for the organization, correct? Not the NFL, but rather— For the Buccaneers. —the Buccaneers. Correct. Their accountants, when they got this direction, got this information, followed standard accounting practices of accrual accounting and recorded the accrual of the income on the monthly basis. Just like in July, when the lockout ended and there was agreement in principle, they changed the practice because there was a new forecast. If that's all the case, it would be so easy to produce an affidavit from a Buccaneers accountant who said, I made this decision back in April, I got this estimate from the NFL, I talked to so-and-so, and then we wouldn't be here. I don't think there'd be any real issue here. In hindsight, I guess you're right. But the affidavit from Mr. Denner, we felt, made it clear that they followed their standard practice and never changed accounting methods. I'm a little confused. It says—are you splitting argument? I just want to make sure I'm not missing the time. I'm reserving four minutes. There is one issue that Mr. Redford may address if he comes up, and he'll have a minute. If not, I'll use— On rebuttal? I guess it says he wants a rebuttal, but the new issues—any—you can't raise new issues on rebuttal. I'm just—if he wants to speak now, that's the only reason I'm pointing this out. No, sir. Okay. Okay. Well, you've got time for rebuttal. Thank you. Mr. Hicks? Is that right? Yeah, that's what I was trying to clarify. So you're done for now, Mr. Rice? And it's their turn now? We're just trying to—he's confused, too. Okay. Right. Our time's a little off on the sheet they gave us, but—Mr. Hicks, whenever you're ready. Thank you, Your Honor. And may it please the Court, George Hicks for the Apollese. The Tampa Bay Buccaneers football team wants $20 million from BP based on the happenstance of its own accounting error. In 2009 and 2010, the team recorded royalties from NFL ventures during the months of the NFL season. In 2011, however, the team recorded some of those same royalties in May and June. But literally the only thing that changed in 2011, as compared to 2009 and 2010, was that in 2011 there was the hypothetical possibility that some or all of the NFL season much later that year might be canceled due to a work stoppage. But by July, everyone knew that this was no longer the case. The stoppage never occurred, and the NFL season proceeded as usual, just like in 2009 and 2010. Therefore, at the end of the year, 2011 was no different than 2009 and 2010. Yet the team still kept the royalties recorded in May and June rather than re-recording them to the months of the NFL season, despite the fact that in previous years they had recorded during the NFL season and despite the fact that in other contexts the team consistently engaged in such re-recording at year-end. You referred to it as royalties, and we heard that that was the main mistake that Judge Barbee made, is considering them as royalties when they were not on that claim. Well, Your Honor, I think that first of all they had been reporting them as royalties in previous years on their own P&L, but I think the more important thing is that they told the CSSP, the program accountants, in their claim as part of this demand for $20 justifiably relied on that. That's at record $15.81 and record $17.60. And even in their opening brief, they refer, I think rather euphemistically, they say, royalty qualities exist within the venture's revenue. So I think that when you put the two of those together, both the euphemistic admission and then what they actually submitted to the program accountants and on which the program accountants relied, that I think that that's what you have to go with when it comes to the program accountants' determination. But keeping this revenue in May and June 2011, it has no basis in accrual accounting. It deviates from the team's consistent practice in previous years and with respect to other revenue. It was one month, March of 2009, when they did accrue. They put some of these figures into the March 2009 books. Right, Your Honor. And that's because during the year of 2009, they were using a modified cash accounting approach. And so they would do it when they actually happened to get the cash in hand from the NFL. But in 2009, what they did in order to, because they were moving to accrual accounting, they did a true up. And so at the end of the year, you know, according to actual accrual accounting principles, they had the revenue recorded in the months of the NFL season. Again, just as they did in 2010. And then they deviated from that in 2011. And I do want to sort of respond directly to some of the statements that my friend on the other side made. The first is, you know, in response to Judge Costa's question, I think Judge Englehart asked it as well, which is, was there actually any direction or instruction from the NFL to record the revenues in April, May, June of 2011? The answer is very directly no. The only evidence that is in the record at all about this entire crux of the dispute, because I note that this vaunted forecast isn't even in the record, which I think would have gone a long way towards supporting their accounting claim. But the only evidence is the affidavit. And the affidavit very clearly says the NFL provided a, quote, revenue forecast of amounts bargaining agreement could not be reached. Then it says, based on this information, the revenue was recognized by the Buccaneers. And after the collective bargaining agreement was agreed to, the Buccaneers then recorded it throughout the rest of the 2011 season. So there's absolutely nothing in that affidavit that even can be suggested that the NFL itself directed that these revenues should be recorded or had to be recorded in May and June of 2011. And of course, you know, it's certainly questionable whether if the NFL had directed that, that that would, you know, matter for accounting principles. But the point is that there's absolutely no direction. And to Judge Jolly, one of your questions, I believe, would, again, was whether there's any evidence in the record that any other team did this. And the answer is, again, no, there is not any record evidence of that. And I think that that's a theme that sort of permeates the claim here. What is, in art, the counter to that is that that kind of information was not available. Is that a complete answer? I mean, you know, we don't have any access to discovery either during the claims process. And I think that it is, you know, frankly incumbent upon the claimant to come up with accounting reasons, you know, at the time if they're going to submit a claim and demand $20 million. And the fact is that they haven't. They haven't, you know, submitted the... You're not a formal discoverer. I mean, you can obviously go ask someone for help with your claim. Well, sure. You can call up other teams and say, would you submit an affidavit saying what you did? I mean, nothing prevents that. Well, no, I mean, there's nothing preventing that at all. And I think that, you know, if, you know, they're with the other 31 NFL teams and apparently they all sit on a board together, I don't think it actually would have been a great burden at all to try to come up with some sort of affidavit, some sort of statement that would support... So this is not just an aberration associated specifically with yours? I'm sorry, Your Honor? Any kind of evidence has been shown that this is not an accounting aberration, simply associated with the cause of one that was based on rationality? Well, sure. I mean, I think that there's also certainly questions about the... Well, and I think that it is incumbent upon them to come up with something like that. But there hasn't been throughout any level in this case, whether it's before the program accountants, who are the only accountants in this process. I mean, they have an obligation to cover evidence in their favor, and that would have been evidence in their favor, if they... Well, sure. And they haven't done that. And they haven't put in any expert testimony of an accountant. There's nothing in their briefs before the appeal panel, before Judge Barbier, before this court that provides any rule of accounting or any principle or any methodology, a treatise, anything that would support the idea that they can make a shift in how they're going to record this revenue as compared to previous years, but also then be able to justify that by saying that we received just this forecast of estimated amounts from the NFL based on a hypothetical possibility, and then also keep those revenues in those months when it was determined and known by everybody a couple months later that the hypothetical possibility was not going to happen. So I think that when you put all of that together, you should at least be required to come up with some sort of record evidence to support the facts. But then also accounting principles or accounting methodology or something that would at least show that what the experts in this case, the expert accountants, didn't do. Are the tax consequences favorable to them by treating this income in the earlier months as opposed to the standard practice? Your Honor, I don't know what the tax consequences are. I mean, this is the first I've heard that it would be sort of favorable to them in a tax situation to record them in a different way, but certainly... It was on the income versus royalty, I think, not on the month. Okay, but to go to the question of recording these revenues in this month makes all the difference. It is dispositive. It is the only way that they are able to get in the door of the claims process and be able to make... It's the only benefit to them that they could show. They're only... I mean, that is the only financial or economic benefit that they could show as a shift in their accounting practices. As far as I know, and I can't discern any other economic benefit that there would be to having... No economic benefit. I'm sorry, Your Honor? They did not offer any other economic benefit. I have not seen any in any of the briefing at any stage here as to why they would have done that. No, and I... Well, it is what makes this claim possible, and there's no other way to put it other than that. And I want to respond to a couple... As you know, most of the cases we get on appeal, the district court has denied discretionary review, so it's abuse of discretion. That's 90% of these appeals are in that posture. This one, the district court exercised review, flipped the decision below, and it's here on appeal now. What is the standard of review in this situation? That was literally the next issue I was going to get to, because I wanted to respond to that colloquy. In our view, it's an abuse of Judge Barbier's discretion, but looking at if he made findings, then those are, of course, reviewed for clear error. If he did engage in some sort of interpretation of case law or the settlement, that would be de novo. But I do want to push back on this idea of abuse of discretion slash de novo, which I don't think is a thing, but is also not applicable here. And I think that if you take a look at Judge Barbier's order, he made findings about how the Buccaneers treated this particular revenue in previous years, how they did a different thing in 2011, and then he went on to say that the Buccaneers' reason for deviating from that policy, they put forth this justification based on this affidavit describing a forecast that is not on the record. He said that's not persuasive. And those, to me, all seem to sound in factual findings. They're really kind of looking back at what the accountants did and using their professional expertise as the program, the neutral program accountants. So I think that looking at his decision in the context of what the professional experts did, I think those are all findings that deserve clear error, that there's not a de novo issue here. And I think it can very clearly be said that there was not any clear error in his particular findings. You know, he does make the statement about that, you know, presumably, and my friend brought this up, that presumably they did this to match up the revenues with the expenses. I don't think that's clearly erroneous, but I also don't think it really matters, because, you know, the important thing is what they did in previous seasons. So in 2009 and 2010, they recorded these revenues during the NFL season. And then in 2011, they did not do that. They deviated from that practice, and I don't think there's any dispute over that. What's BP's position? There was this whole discussion of, do we have records of what actually was entered into in the books in 2011 contemporaneously versus documents created after? I mean, what's BP's position on that? Well, our position is laid out in the briefs, which is that it took the program over a year to get any documents from the Buccaneers, you know, particularly the P&L statements that are sort of critical to all this. And, you know, even then, there was nothing in those particular records that indicated that they were contemporaneous. I mean, I think you, Judge Costa, pointed out that there may be a large volume, but it's not a difficult lift to go to your regular accountant and say, could you please, you know, look at the P&L statements for these particular years because we're submitting them as part of a claim. And I think that, I mean, that's sort of the threshold thing you have to do to establish and submit a claim here is to submit documentation that you were harmed by the spill and satisfy these particular tests. And so I think the fact that it took the Buccaneers a year to do that, you know, and even then, I believe that this affidavit, I think it, I believe it's dated, it was not part of the original record that they even submitted to the program accountants. I mean, it's dated April 2016, and I believe the original decision by the program accountants, which March 2016. So again, I think this all just sort of goes to, you know, the determination that, you know, they were required to submit to the program in order to recover their claim, their requested claim for $20 million. That simply wasn't done here. And you know, Judge Costa, I think you had asked about, you had asked about evidence from the Bucs accounting at the time, and again, that there's nothing in the record about that. This does seem to have been all created after the fact, which again, we think just sort of supports the notion that there was not sufficient documentation to support their claim that these revenues were properly recorded in May and June, and that therefore, they are entitled to a $20 million claim. All right. Thank you, Mr. Hicks. Thank you. Mr. Rice? Judge Barbier's opinion here is five sentences long. He starts with the royalty question. Counsel says it's important what they did in the past. In the record are the 2009 and 2010 K-1 reports from the Buccaneers, record 758, and I think it's a straight sequence there. It's clear they reported these as ordinary income in both 2009 and 2010. Therefore, Judge Barbier's presumption that these are royalties is without any factual support whatsoever in the record. What is the significance of that in your favor? Because Judge Barbier's principle finding was these were royalty incomes, and then he said, and their expenses were related to the football season, so he sort of used a matching theory and said, so presumably, they used them historically in the football season because that's where their expenses were. But there's nothing in the record to support that whatsoever. And he said that it was an error to move the royalty. No one had found error. Your Honor's asking me several questions about what didn't go in the record. The record was not challenged at all below. The account vendors got everything they wanted. They issued a decision. We went through two or three different, they had a previous case, a previous debate about ticketing and seat payments. We went through that. There was massive work on this case with the accountants. No one's ever challenged. There's nothing in this record challenging the contemporaneous nature of these documents until this appeal brief. And Judge Barbier, he didn't challenge them. And remember, they appealed from our panel ruling in our favor. And the panel ruling in our favor made a finding, a review of the record discloses that claimant received annually from the NFL fixed monthly payments as part of the league's revenue sharing. Under normal business conditions, these were made over the course of the season. But we had a unique situation. And they found that the accounting vendors did not find an error. There was no mention of error in any of the records. The first mention of error is in Judge Barbier's opinion when he deals with royalties. Policy 495 defines error. And it says that error in general accounting investments held determined to be inaccurate based on subsequent events will not be considered accounting errors if the entries were made using the best available information at the time. That has been upheld by this court on multiple occasions. The record is replete with statements of financial accounting concepts, SEC codifications. All of these are in the extended record. They say that for purposes of applying accrual accounting, you accrue when persuasive evidence of an arrangement exists, delivery has occurred or services have been rendered, seller's price of the buyer is fixed or determinable, and collectability is reasonably assured. That's when you have to accrue. And that's exactly what the accountants here did. They accrued under those principles. Accrual accounting depicts the effects of transactions and other events and circumstances, and you do it based on the best information you have at the time. And in April of 2011, the best information is our income is going to be level, we're not going to have the bumps from the football season, and therefore we accrue as we have the realization of the expectation. All right. Your time is up. I think there's still that minute left. Do you want it or does Mr. Redfern want it? I'm going to take it. The claimant property of product accrual accounting methods. Claimant accrued the income as it was directed to do so and as accounting principles, and there's no evidence. There's a lot of speculation in this last brief that BP filed, raised for the first time, but there's no evidence to support any of their speculation. And I believe the reason we have the speculation is because they can't prove under this court's rulings that there was an era that justified a moving revenue. In the absence of an era, you do not move revenue under the AVM opinion and the 495 policy and opinion. Thank you, Your Honor. Thank you. All right. The case is submitted, and the court is now in recess.